UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DANETTE L. RING, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL S. ASTRUE, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:12-CV-197<br>Collier/Carter |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the Plaintiff a period of disability, disability, insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 18).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was forty-three years old at the time of the ALJ's decision (Tr. 155, 161). Plaintiff attended school until the eleventh grade and previously worked as a cashier and telemarketer (Tr. 40, 183, 198-205). Plaintiff indicated that she worked until August 2004 (Tr. 39, 198).

## Application for Benefits

Plaintiff protectively applied for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on April 27, 2009, alleging she became disabled on August 2, 2008 (Tr. 10, 155, 161). After her applications were denied at the initial and reconsideration levels (Tr. 82, 96), Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 102). Following a hearing on September 16, 2010 (Tr. 19), the ALJ's October 20, 2010 decision found Plaintiff not disabled from August 2, 2008 through October 20, 2010, the date of the Administrative decision (Tr. 19-26). The Appeals Council denied Plaintiff's request for review (Tr. 1-4). The Commissioner's final decision is ripe for review under 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Services*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case he/she cannot return to his/er former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he/she can perform, considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

2

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971*); Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since August 2, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416. 971 *et seq.*).

3. The claimant has the following severe impairments: status-post left ankle fracture; obesity; and adjustment disorder with anxiety and depressed mood (20 CFR 404.1520(c) and 416. 920(c)).

4. The claimant does not have any impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 9, 1966 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (Se SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-26).

## Issues Presented

1. Whether the ALJ erred by failing to properly evaluate the Plaintiff's mental impairment and resulting functional limitations.

2. Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's statements.

3. Whether the ALJ failed to consider the Plaintiff's obesity and the effect that it has on her other severe impairments.

## Relevant Facts

A. <u>Medical Evidence</u>

According to Plaintiff's history, she suffered a left ankle fracture in August 2004 and had the ankle surgically repaired in September 2004 (Tr. 21, 344). The records also indicate the Plaintiff has previously been diagnosed with depressive disorder, hypertension, cervical incompetency, diabetes, morbid obesity, and adjustment disorder with mixed anxiety and depressed mood (Tr. 324, 344, 361, 602). The Plaintiff has also received treatment for a variety

4

of conditions from the Erlanger Medical Center Hospital and Erlanger North Hospital from 2006 to 2008, Dr. Bilbrey at Soddy Daisy Medical Center from November 2009 to January 2010, and Memorial Hospital in February 2010 (Tr. 366-496, 497-577, 650-669, 670-686).

On July 26, 2007, the Plaintiff was treated at Volunteers in Medicine by Dr. Charles Hughes, and diagnosed with joint pain in ankle and depressive disorder (Tr. 337). Dr. Hughes noted Plaintiff had six screws in her left ankle, which according to the Plaintiff causes anxiety. Dr. Hughes also noted that Plaintiff takes Hydrocodone every eight hours for her ankle pain. Records from January 8, 2008, document diagnoses of depressive disorder, hypertension, and cervical incompetence (Tr. 330).

On June 24, 2008, the Plaintiff was seen by Dr. Brandon Cincere at University Orthopaedic and was diagnosed with status post left trimalleolar ankle (open reduction and internal fixation). The Plaintiff was following up on her ankle injury, but had not previously visited University Orthopaedic since June 2007. Plaintiff reported that she no longer had a car, but had done a lot of walking and had swelling in her ankle. Upon physical examination, Dr. Cincere noted dorsiflexion to neutral and plantar flexion to thirty degrees. Dr. Cincere also noted good inversion/eversion, a stable anterior drawer, and good subtalar motion without any pain. Dr. Cincere's assessment included instructions for the Plaintiff to continue anti-inflammatories and compression stocking on her left lower extremity. Plaintiff stated she did not wish to have surgery at that time (Tr. 344).

On July 10, 2008, Dr. Franklin Calhoun diagnosed the Plaintiff with hypertension and morbid obesity (Tr. 361).

On July 10, 2009, Plaintiff met with Dr. Thomas Mullady for a consultative examination. Plaintiff complained of severe pain with range of motion maneuvers of the ankle. Dr. Mullady

5

noted a decreased range of motion of the left ankle with dorsiflexion to zero degrees, plantar flexion to thirty degrees, eversion to ten degrees, and inversion to twenty degrees. Dr. Mullady also noted a left leg limp in the Plaintiff's gait. The impression reported by Dr. Mullady was listed as fractured left ankle postoperative status, history of essential hypertension, and exogenous obesity (Tr. 598).

On July 16, 2009, Plaintiff met with Mr. Benjamin James Biller, MS, a licensed senior Psychological Examiner, for a psychological examination. Mr. Biller administered a mental status exam and indicated that Plaintiff was tearful throughout the interview and that her actions were considered to be depressed and socially withdrawn. Mr. Biller noted that Plaintiff did not have any trouble speaking and her thoughts appeared to be connected in a logical manner. Plaintiff reported that she did not suffer from any perceptual abnormalities or hallucinations (Tr. 600). Plaintiff noted that she did not have elevated moods or manic phases, but that she had had a depressed mood for the past two years (Tr. 600-601). Plaintiff stated the reasons for her depressed mood was her children bothering her, fights with her husband, not being able to do things because of her ankle, and being easily stressed out. Plaintiff noted that depressive symptoms include: not wanting to be around people, crying spells, not wanting to do anything, and outbursts of anger. Plaintiff also noted anxiety issues. Plaintiff did not describe having panic attacks or phobic symptoms. Mr. Biller noted that Plaintiff's five senses appeared to be functioning adequately. Plaintiff was able to respond to simple questions indicating that she was not trying to appear less competent than she actually was. Mr. Biller indicated that Plaintiff appeared to be functioning in the average range of intelligence (Tr. 601).

During Plaintiff's psychological examination with Mr. Biller, Plaintiff reported that the problems causing her to be disabled were primarily physical and that her feelings of anxiety and

depression were secondary issues (Tr. 601).

The diagnostic impression reported by Mr. Biller was that of adjustment disorder with mixed anxiety and depressed mood (Tr. 602). In conclusion, Mr. Biller noted Plaintiff did not appear to have any psychotic symptoms, however, Plaintiff appeared to be suffering from a significant level of depression and anxiety secondary to her physical health problems. Dr. Biller indicated that Plaintiff's:

> Ability to sustain concentration and be persistent with work processes appears to be mildly affected due to depression and anxiety. Her ability to interact with peers and supervisors in a standardized work setting appears to be mildly to moderately affected due to depression and anxiety. Her ability to adapt to changes in the work environment and to be aware of hazards and travel unaccompanied in unfamiliar places or use public transportation appears to be unaffected. This individual reported that her problems are primarily physical in nature.

(Tr. 603).

B. Plaintiff's Testimony

In a functional report completed in June 2009, Plaintiff reported she lived in a house with her husband (Tr. 206). Plaintiff reported that she frequently sits and watches television (Tr. 206). She used to bowl and play tennis, but she says she can no longer play those sports (Tr. 210). She has cats, but her husband and kids take care of the cats (Tr. 207). Plaintiff goes shopping about three times a month with her husband, kids, or a friend. She indicated that she cannot go out alone (Tr. 209). She also noted that her husband has to remind her to go places (Tr. 210). Plaintiff reported that her husband does all of the household chores, and she noted that if she tries to clean it can take five to eight hours (Tr. 208). Plaintiff reported that her husband typically fixes their dinner because she cannot stand long enough to cook (Tr. 208). Plaintiff reported that she does not spend much time with others; she usually keeps to herself or spends time with her husband and kids (Tr. 210).

7

At the hearing, Plaintiff testified that she was homeless, and her last address was for an apartment in Soddy Daisy (Tr. 37). Plaintiff stated that she has not worked since the onset of her disability on August 2, 2008, and that her last full-time job was in 2004 (Tr. 39). Plaintiff testified one reason she filed for disability is because of an ankle fracturing in 2004 (Tr. 40). Plaintiff had surgery to repair the ankle in 2004, but refused to have a second surgery in 2008 out of fear that the injury would worsen (Tr. 40). Plaintiff testified that her ankle injury does not allow her to do much (Tr. 41). She indicated that she couldn't sit or stand long, her ankle frequently swells, and the pain from her ankle is constant and unbearable (Tr. 41, 50). Plaintiff also indicated that her ankle has been going numb when she sits (Tr. 41). Plaintiff testified that she can sit for about an hour at a time and walk twenty to thirty minutes before sitting again (Tr. 41, 51, 52). Shifting around or briefly standing also eases the problems with her ankle (Tr. 42).

Plaintiff noted that she is currently 5'2" and 270 pounds (Tr. 42). Plaintiff admitted that her primary care doctor, Dr. Gilbert, has advised her to lose weight, but Plaintiff stated that her inability to do a lot of walking has made losing weight difficult (Tr. 42). Plaintiff has also attempted to limit her eating, but she still has not been able to lose weight (Tr. 42). Plaintiff does not use a cane or other device to help her walk (Tr. 44).

Plaintiff testified she currently takes medication for her blood pressure (Tr. 45). Plaintiff stated she does not suffer any side effects, other than occasional drowsiness, from any of her medication (Tr. 46, 53). Plaintiff noted that she took Lexapro to deal with her nerves three or four years ago. She recently went to the emergency room because of an ankle injury and was given some Ativan and Percocet to lessen the pain (Tr. 43). Plaintiff testified that she suffered a lumbar strain in 2009 that required her to go to the hospital (Tr. 51). She also indicated that she went to the emergency room for bronchitis earlier that year in 2010 (Tr. 46). Plaintiff testified

8

that it contributes to her disability as it makes it hard for her to move without losing her breath (Tr. 46).

Plaintiff testified that she typically spends her day talking to her daughter or going out to Wal-Mart or Kmart (Tr. 47). She noted that her daughter has to push her around in a wheelchair because she cannot walk the distance of the stores (Tr. 47). Plaintiff is unable to perform any housework (Tr. 47). She testified that she thinks she can lift three to five pounds (Tr. 47). Plaintiff testified that, contrary to the prior judge's findings, she believes she is unable to do sedentary work (Tr. 48). She indicated that her condition has worsened from her prior claim, and that she is unable to work in public because her nerves don't allow her to tolerate "much of anything" (Tr. 48). Plaintiff also indicated that her having little education affects her ability to work in public (Tr. 48), but noted that she attempted to go back to school and get her GED, but she required special help because of her reading and math abilities (Tr. 49).

C. <u>Vocational Evidence</u>

Dr. Benjamin Johnston testified as a vocational expert ("VE") (Tr. 53-55). At the administrative hearing, the ALJ asked the VE to assume an individual with Plaintiff's vocational profile who is limited to sedentary work; the individual would require a sit/stand option approximately every 45 minutes to one hour. The VE testified that the individual would not be able to perform any of Plaintiff's past work. The VE also testified that there were no transferable skills. However, the VE identified entry-level jobs that such a hypothetical individual would be able to perform. The VE testified that the hypothetical individual could work as an inspector, an SVP two job, where the person would sit at a desk inspecting small jobs. There are 250-300 such jobs in the region approximately an hour's driving time of Chattanooga and 100,000 jobs nationally. The hypothetical individual could work as a hand-packager where the person would

9

sit and put things together in boxes or bags (Tr. 53-54). There are 250-300 hand-packaging jobs in the region and 100,000 nationally. The hypothetical individual could also work as an assembler. There are 300-350 jobs regionally and 100,000 jobs nationally (Tr. 54). Assuming the hypothetical individual would also need to lie down for one or two hours during the course of an eight-hour workday, the VE testified that there would not be any entry-level jobs for that person to perform (Tr. 54-55). The VE testified that the DOT "doesn't anticipate sit/stand options at any level of work. But [his] experience . . . has shown that's how a lot of workers perform. . . ." (Tr-55).

The Plaintiff's attorney asked the VE if there are any jobs for an individual who can only sit for an hour before needing a fifteen-minute break. The VE testified that there are no jobs that that individual could perform (Tr. 55).

## Analysis

Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate the Plaintiff's mental impairment and resulting functional limitations; (2) failing to properly evaluate the credibility of the Plaintiff's statements; and (3) failing to consider the Plaintiff's obesity and the effect that her obesity has on her other impairments. In support of these issues, the Plaintiff asserts the resulting RFC failed to provide any mental limitations, the ALJ's credibility analysis was not sufficient to satisfy SSR 96-7P, and the ALJ "failed to analyze the effects of [Plaintiff's] obesity on her left ankle, Hypertension, and Cervical Incompetence." (Doc. 12, Plaintiff's Brief pp 1 and 5-9). The Commissioner asserts that substantial evidence supports the ALJ's RFC determination, credibility determination, and obesity determination. For the reasons that follow, I conclude that there is substantial evidence to support the Commissioner's decision.

1. <u>Mental Limitation and RFC Determination</u>

The Plaintiff argues the ALJ "erred by failing to properly consider the Plaintiff's mental impairment and resulting limitations and what impact that impairment has on her ability to do work." The Plaintiff asserts her residual functional capacity does not provide for any mental limitations (Doc. 12, Plaintiff's Memorandum at 6). The Plaintiff refers to the psychological examination performed by Mr. Biller in which he diagnosed the Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood (Tr. 602). Mr. Biller estimated Plaintiff to be functioning in the average range of intelligence. She did not appear to have psychotic symptoms, though she did have a significant level of depression and anxiety based on her self-report and the examiner's observation. Her ability to understand and remember simple and /or detailed instructions appeared to be unaffected. Her ability to sustain concentration and be persistent with work processes appeared to be mildly affected due to depression and anxiety. Her ability to interact with peers and supervisors in a standardized work setting appears to be mildly to moderately affected due to depression and anxiety. Her ability to adapt to changes in the work environment and to be aware of hazards and travel unaccompanied in unfamiliar places or use public transportation appeared to be unaffected. Plaintiff reported her problems were primarily physical in nature. Mr. Biller assessed a GAF of 60 which the ALJ assessed as evincing some moderate symptoms (Tr. 22 and 603). He assessed her able to manage her own funds (Tr. 603). Based on the opinion of Mr. Biller, the ALJ found that Plaintiff's mental impairment was severe and assessed a mild-to-moderate limitation in concentration.

Pursuant to Social Security Ruling 96-5p, "an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all other evidence in the case record about what an individual can do despite his or her impairment(s)." The ALJ alone is responsible

11

for determining the Plaintiff's RFC. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ noted that Plaintiff's limitation was "accommodated by limiting the claimant to unskilled work, a provision which would not significantly erode the sedentary job base under SSR 85-15." (Tr. 22, 24). *See* 20 C.F.R. §§404.1568 (a), 416.968(a) ("Unskilled work is work which needs little judgment to do simple duties that can be learned on the job in a short period of time."); SSR 85-15 (significant reduction in the occupational base occurs if a claimant had a substantial loss in the ability to perform basic mental activities, such as understand, remember, and carry out simple instructions or respond appropriately to supervision, coworkers, and usual work situations).

Further, as the ALJ noted, none of the Plaintiff's treating physicians have opined that Plaintiff was disabled (Tr. 25). *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (the absence of limitations opined by a claimant's treating source constituted substantial evidence supporting the ALJ's finding of non-disability); *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) (the absence of activity restrictions opined by a claimant's treating physicians supported the finding of non-disability); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.")

The Plaintiff asserts that the ALJ did not properly question the vocational expert regarding mental limitations of the Plaintiff. (Doc. 12, Plaintiff's Memorandum at 6-7). Despite the Plaintiff's assertions, I conclude substantial evidence supports the ALJ's RFC determination. As the Commissioner notes, Plaintiff did not seek or receive treatment from a mental health professional before or during the relevant period in this case (Tr. 253-686). *See White v. Comm'r*

*of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (a lack of mental health treatment can reasonably be construed as an alleviation of alleged mental symptoms); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's failure to seek treatment undercuts claim of severe symptoms). Further, a reviewing agency expert Andrew J. Phay, Ph.D., in a Psychiatric Review Technique opined on August 19, 2009 that Plaintiff's mental impairment was non-severe causing only mild limitations related primarily to physical conditions (Tr. 614, 624, 626). See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (agency consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"). The ALJ gave the Plaintiff the benefit of the doubt and gave some weight to "claimant's assertion of inability to follow complex oral instructions and occasional memory deficits and found a severe mental impairment based on a mild-to-moderate limitation in maintaining concentration, persistence, and pace" (Tr. 22, 614, 624, 626). The ALJ correctly found this limitation was "accommodated by limiting the claimant to unskilled work, a provision which would not significantly erode the sedentary job base under SSR 85-15" (Tr. 24).[1] See 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little judgment to do simple duties that can be learned on the job in a short period of time."); SSR 85-15 (significant reduction in the occupational base occurs if a claimant had a *substantial loss* in the ability to perform basic mental activities, such as understand, remember,

---

[1] As the Commissioner notes, the ALJ relied on Grid Rule 201.25 to find Plaintiff not disabled (Tr. 26). Thus, Plaintiff's argument regarding the hypothetical and vocational expert is unavailing (*see* Pl.'s Br. at 6-7) because the Grids provide administrative notice of the numbers of *unskilled* jobs that exist at the various exertional levels in the national economy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, c 200.00(b); *see also Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 772 (6th Cir. 1987) (an ALJ may rely on Grids "unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations"); *Kimbrough v. Sec'y of Health and Human Servs.,* 801 F.2d 794, 796 (6th Cir. 1986) (a minor nonexertional limitation does not preclude application of the Grids).

and carry out simple instructions or respond appropriately to supervision, coworkers, and usual work situations);[2] SSR 96-9p. For those reasons I conclude there is substantial evidence to support the ALJ's RFC determination.

### 2. Credibility Determination

Plaintiff next argues that the ALJ failed to properly evaluate the Plaintiff's statements in accordance with SSR 96-7p. Plaintiff asserts the ALJ "did not specifically state whether he found the Plaintiff's testimony credible or not credible, and since he did not specifically state the amount of weight he assigned to the testimony, the ALJ violated SSR 96-7P." (Doc. 12, Plaintiff's Memorandum at 7). Plaintiff contends that such language is "boilerplate" and does not meet the requirements of SSR 96-7p which provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(Doc. 12, Plaintiff's Memorandum at 8, citing SSA Ruling 96-7p)

In his decision, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 24). However, that is not all the ALJ said about the issue. His analysis continues as follows:

> I begin this analysis by noting that Judge Deen issued an unfavorable step five decision on August 1, 2008, which found a sedentary residual functional capacity (Exhibit B2A). I find no new and material evidence, or other *Drummond* factors, warranting a change in the sedentary residual functional capacity. The claimant

---
[2] http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html

14

continues to receive treatment for her 2004 left ankle fracture/surgery (e.g. Exhibit B19F). The findings do not indicate a significant deterioration in this impairment. The claimant is also markedly obese (270 pounds for a height of 62 inches), but obesity was also an impairment considered in the prior decision. Dr. Mullady's consultative examination (Exhibit B9F) does not assess work capacity, but his findings would allow for sedentary work. The DDS physicians allowed a sedentary residual functional capacity (Exhibit B15F), and I agree.

(Tr. 24).

First I note that an ALJ is not required to discuss each and every piece of evidence. This court can consider all of the evidence as a whole and determine if there is substantial evidence in light of all the evidence to support the ALJ's decision. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, at 535, 536 (6th Cir. 2005); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) (Secretary need not address every piece of evidence in the record); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) ("Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning."). Although the ALJ does not spell out his reasoning for discounting the Plaintiff's credibility in specific detail, the ALJ does refer to a prior unfavorable decision. The ALJ notes that Acquiescence Ruling 98-4(6), adopting the holding of the Court of Appeals for the Sixth Circuit in *Drummond v. Commissioner of Social Security*, 126 F.3 837 (6th Cir. 1997) states:

> [t]hat when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . .

(Tr. 23-24).

Here, the ALJ found no new or material evidence that would warrant a change in the sedentary residual functional capacity. The ALJ noted that the Plaintiff continues to receive

15

treatment for her 2004 left ankle surgery, but found that there has not been a significant deterioration in Plaintiff's impairment (Tr. 24). He referred to Dr. Mullady's examination and the DDS physician's residual functional capacity assessment.

The reviewing agency experts opined that Plaintiff's statements regarding her symptoms are inconsistent with the residual functional capacity assessment. Dr. Joe G. Allison opined that Plaintiff's "statements about her symptoms and functional limitations are only partially credible as the severity of the alleged impairments are not completely consistent with the objective findings." (Tr. 610). Dr. Allison also noted that there was "no evidence of any end organ damage due to high blood pressure" (Tr. 610). Dr. Susan L. Warner noted that no significant change (improvement/worsening) occurred, and stated that Plaintiff "has no new evidence that suggests the L ankle or weight conditions are different." (Tr. 633). Dr. Warner also opined that Plaintiff's "symptoms of pain and the alleged limitation is not consistent with MER or objective findings and is not considered credible." (Tr. 641). *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (agency consultants are highly qualified physicians who are also experts in Social Security disability evaluation); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (upholding credibility determination where the ALJ provided a reasonable explanation based on substantial evidence).

The ALJ, who stands at the end of the process, has the obligation to consider the entire record evidence and, with the advantage of seeing the entire record including the hearing testimony, make the ultimate decision concerning disability. It is the province of the Commissioner to weigh the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [the medical evidence] conflict"). While the Plaintiff notes that the ALJ did not discuss his reasoning in specific detail, he did refer to specific parts of

16

the record that support his conclusion regarding her credibility. I conclude that given the other substantial evidence of record which supports the ALJ's findings regarding Plaintiff's level of functioning, coupled with the analysis of the ALJ, any error, if there was any, was harmless. It would be futile to require a remand under these circumstances.

    3. Plaintiff's Obesity

The Plaintiff finally argues the ALJ improperly evaluated her obesity under SSR 02-1p. (Doc. 12, Plaintiff's Memorandum at 8-9). Plaintiff asserts that "[a]lthough the ALJ found the Plaintiff's obesity to be a severe impairment, he failed to analyze the effects of her obesity on her left ankle, Hypertension, and her Cervical Incompetence." (Doc. 12, Plaintiff's Memorandum at 9). However, as the Commissioner argues, Plaintiff has made no specific showing that these impairments were disabling or exceeded her RFC for sedentary work, and Plaintiff has failed to explain how the ALJ's decision violated SSR 02-1p. *See Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857-58 (6th Cir. 2003) (in rejecting claim that obesity was not properly considered, the court noted that the claimant "provided no evidence that obesity affected her ability to work"); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (generalized claim that obesity exacerbates impairments is insufficient without medical evidence specifying how or in what way it does so); *Sharbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (rejecting speculation that obesity exacerbated impairments is insufficient).

SSR 02-1p provides that a claimant's obesity will be considered in determining whether a claimant has a severe impairment, in determining whether a claimant's impairments meet or equal a listed impairment, and in determining whether the claimant's impairments prevent her from doing her past work or any other work by considering the functionally limiting effects of her obesity in assessing her ability to do work activity. *See* 02-1p, 67 Fed. Reg. at 57, 861-63. In

17

this case, the ALJ noted that Plaintiff has not engaged in substantial gainful activity since the alleged onset date due to her impairments (Tr. 21). The ALJ indicated that Dr. Mullady reported her prior ankle injury and obesity (Tr. 22). The ALJ then found Plaintiff had "severe" impairments, but her impairments did not meet or equal a listed impairment (Tr. 22). The Plaintiff, in her Memorandum, notes that the ALJ did not include Hypertension or Cervical Incompetence as severe impairments even though the record shows Plaintiff's treatment for those diagnoses. However, contrary to Plaintiff's assertions, the ALJ stated that he "considered all listings applicable to the claimant's asserted impairments, and specifically considered the additional effects of the claimant's obesity under Social Security Ruling 02-1p." (Tr. 22). The ALJ's finding of a range of sedentary work accommodates Plaintiff's functional limitations (Tr. 23). Although Plaintiff has been found unable to perform past relevant work, the ALJ notes, as stated above, that none of the Plaintiff's treating physicians have opined that the Plaintiff is disabled or that her work-related abilities are restricted in any meaningful way not accommodated by the above residual functional capacity (Tr. 25).

Referring back to the *Drummond* factors, the ALJ has found no new or material evidence that would warrant a change in the sedentary residual functional capacity. Judge Deen issued an unfavorable step five decision on August 1, 2008, which found a sedentary residual functional capacity (Tr. 24, 68). Judge Deen noted in 2008 that Plaintiff "should be able to perform the full demands of full-time sedentary work that requires standing and/or walking for 1-2 hours and/or sitting for 6-8 hours during an 8-hour workday and lifting/carrying up to 10 pounds frequently." (Tr. 73). The ALJ indicated that Plaintiff is still receiving treatment for her 2004 left ankle surgery and though the Plaintiff now weights 270 lbs., up from 245 lbs. reported at the August 2008 hearing, obesity was an impairment considered in the prior decision (Tr. 24, 71). The ALJ

18

relied primarily on the 2008 decision of Judge Deen, Dr. Mullady's consultative examination, and Plaintiff's primary physicians, who acknowledge that Plaintiff was obese (Tr. 61-77, 264-321, 322-341, 342-359, 360-365, 597-98). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Warner*, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    1. The plaintiff's motion for judgment on the administrative record (Doc. 12) be DENIED.

    2. The defendant's motion for summary judgment (Doc. 18) be GRANTED.

    3. The case be DISMISSED.[3]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).